## EXHIBIT A

State of Illinois            )
                             ) ss
County of St. Clair          )

### UNSWORN DECLARATION UNDER PENALTY OF PERJURY
### IN SUPPORT OF COMPLAINT FOR FORFEITURE

I, Larry Brantley, declare under penalty of perjury the following:

At all relevant times, I have been a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA).  The contents of this Declaration are based on information provided to me during the course of my investigation from participants in the criminal activity, from other witnesses, and from other law enforcement officers.

1.      On March 11, 2021, Drug Enforcement Administration (DEA) Task Force Officer Brad Blake (TFO Blake) and declarant, while working as part of the DEA Fairview Heights Operation Trojan Warrior Enforcement Program, conducted a traffic stop on gray 2019 Ford Expedition bearing a Florida registration for improper lane usage.  The traffic stop occurred on Interstate 70 westbound at mile marker 25, in Madison County, Illinois. The registration of the vehicle returned to Hertz Vehicles LLC, of Orlando, Florida.

2.      TFO Blake approached the passenger side of the vehicle and made contact with the driver.  TFO Blake informed the driver the reason for the traffic stop and requested a driver's license. The driver, Antony B. ROUGHT, produced a New York driver's license and handed it to TFO Blake. Declarant approached the vehicle behind TFO Blake and retrieved ROUGHT's driver's license and returned to his patrol vehicle. TFO Blake remained at the passenger side window and spoke with ROUGHT.

3.      ROUGHT told TFO Blake he was traveling to Oklahoma or Texas for a vacation after the recent death of his father.  ROUGHT said his wife told him to take the trip and he planned to go

fishing at Pine Island.  It should be noted, Pine Island is in Florida. TFO Blake could see inside the vehicle and did not see any fishing poles.  While TFO Blake spoke with ROUGHT he observed ROUGHT's voice trembling and his hands shaking. TFO Blake believed ROUGHT appeared to be very nervous.  TFO Blake asked ROUGHT if the vehicle belonged to him and ROUGHT said he rented it for the trip and provided the rental agreement. TFO Blake noticed that ROUGHT rented the vehicle the previous afternoon, on March 10, 2021, and that the vehicle was due back in three days, on March 14, 2021.  TFO Blake noted that ROUGHT had rented the vehicle for only four days.

4.      While TFO Blake spoke with ROUGHT, declarant queried ROUGHT's information in law enforcement databases. Declarant learned that in 1997, ROUGHT had a criminal history and was charged with Alien Overstay in New York.

5.      TFO Blake returned to the patrol vehicle after speaking with ROUGHT. Declarant began searching for information on ROUGHT and searched for a death record for ROUGHT's father. TFO Brantley was unable to find any record or obituary for ROUGHT's father. TFO Blake told declarant about the conversation with he had with ROUGHT and the nervous behavior ROUGHT displayed.

6.      Due to the TFOs training and experience, it is well known to them that Oklahoma is now a source location for the cultivation of marihuana.  The TFOs believed ROUGHT's travel behavior was strange in that he had rented the vehicle for four days for a trip that was approximately twenty-one hours each direction.  The TFOs believed that the timeline given by ROUGHT was not practical for a fishing trip.  The TFOs believed that ROUGHT could be involved in criminal behavior due to his odd travel itinerary and his nervous behavior.  The TFOs decided to ask for consent to search the vehicle for contraband or detain the vehicle if necessary for a K-9 sniff if consent is not given.

7.      While declarant completed the traffic stop on the in-car computer, TFO Blake again approached ROUGHT's rental vehicle, issued him a verbal warning, and handed his driver's license back to him. TFO Blake asked ROUGHT if there was anything illegal inside the vehicle and gave examples, to include marihuana, cocaine, methamphetamines, heroin, and large amounts of United States currency.  ROUGHT responded no to everything mentioned by TFO Blake. TFO Blake asked ROUGHT if the TFOs could search his vehicle.  ROUGHT jokingly said, "No, but I took a 5 Hour" (energy drink).  TFO Blake asked ROUGHT if he had any guns or large amounts of United States currency inside the vehicle and ROUGHT said, "no."  TFO Blake asked ROUGHT if the TFOs could search his vehicle.  ROUGHT picked up his backpack from behind his seat and asked what the TFOs would be doing.  TFO Blake explained to ROUGHT what the TFOs would be searching for and why.  ROUGHT asked, "Can I say no?"  TFO Blake told ROUGHT that he can say no.  ROUGHT confirmed that he was denying the TFOs consent to search.

5.      At this time, TFO Kevin Thebeau (TFO Thebeau) and TFO Kyle Waddington (TFO Waddington) arrived on scene to assist. It should also be noted it started raining heavily at this time.

6.      TFO Blake returned to the patrol vehicle to inform declarant that ROUGHT denied TFOs request to search his vehicle and that they would need to contact a K-9 unit.  TFO Blake advised ROUGHT that his rental vehicle was being detained for a K-9 sniff.  TFO Blake told ROUGHT he could wait inside his vehicle until a K-9 officer arrived.  TFO Blake returned to the patrol vehicle and declarant contacted K-9 Officer Sergeant Cody Wiley (Sgt. Wiley) of the Caseyville Police Department to respond to the traffic stop to conduct a sniff of rental vehicle.  At 12:30pm, Sgt. Wiley informed the TFOs that he was en route to their location.  It should be noted there were scattered showers in the area and the rain was heavy at times during the traffic stop.

7.      At 12:52pm, Sgt. Wiley arrived at the traffic stop with his K-9 Dallas. Sgt. Wiley

3

requested that ROUGHT exit the vehicle while K-9 Dallas conducted a sniff of the vehicle. TFO Blake again approached ROUGHT's vehicle, requested that ROUGHT exit the vehicle, and ROUGHT complied.  ROUGHT stood in front of the patrol vehicle while Sgt. Wiley conducted a sniff with K-9 Dallas.

8.      While ROUGHT stood in front of the patrol vehicle he spoke casually with TFO Blake. ROUGHT told TFO Blake he was currently unemployed as an alarm technician, but he had just inherited a half a million dollars upon his father's death.  Once the sniff was completed, Sgt. Wiley secured K-9 Dallas and explained the sniff to ROUGHT.  Sgt. Wiley stated that K-9 Dallas gave a positive alert for narcotics on the vehicle. TFO Wiley asked ROUGHT if there was any reason why K-9 Dallas would alert on the vehicle for narcotics and ROUGHT said, "I do have money in there, my life savings."

9.      Due to the positive K-9 alert, the TFOs began a probable cause search of ROUGHT's rental vehicle.  Upon searching the passenger compartment of the vehicle, declarant located a black backpack behind the front driver's side seat.  Declarant unzipped the backpack and began checking the contents.  Declarant removed some clothing and located a large brown laundry bag that was tied shut. Declarant untied the laundry bag and located a large clear vacuum sealed bag containing a large amount of United States currency.  Declarant requested that TFOs secure ROUGHT in handcuffs for suspicion of Money Laundering.

10.     TFO Blake read ROUGHT his Miranda Rights and ROUGHT acknowledged he understood his rights. Declarant asked ROUGHT if the United States currency belonged to him and ROUGHT said, yes.  Declarant asked ROUGHT if he knew how much United States currency he possessed and ROUGHT said, "About ninety-thousand."

11.     Before transporting the vehicle to the Fairview Heights Resident Office (FHRO), the

4

TFOs began processing the vehicle for evidence. TFOs Thebeau and Waddington removed the United States currency from the laundry bag and placed it inside of a DEA Evidence Envelope.  TFOs Thebeau and Waddington asked ROUGHT to sign the Evidence Envelope to claim ownership of the United States currency being seized and ROUGHT complied. While in the presence of ROUGHT, TFO Thebeau signed and sealed the Evidence Envelope, as witnessed by TFO Waddington. TFO Thebeau then secured the signed and sealed Evidence Envelope into his patrol vehicle for transport to the FHRO.

12.     Before departing the location of the traffic stop for the FHRO, declarant secured ROUGHT into the front passenger side seat of his patrol vehicle and TFO Blake took possession of ROUGHT's rental vehicle for transport.  All TFOs left the scene of the traffic stop and relocated to the FHRO to assist with processing. While en route to the FHRO, ROUGHT spoke with declarant regarding the case.

13.     During transport to the FHRO, ROUGHT told declarant that he was taking a route through Texas.  ROUGHT said he was heading to the coast and then to Pine Island.  ROUGHT said he had plans to buy a mobile home.  Declarant asked ROUGHT if he had already looked at trailers on Pine Island and ROUGHT stated that he and his wife were there for five months.  ROUGHT told declarant that the currency was his life savings and he had been saving since 2000.  Declarant questioned ROUGHT about his statements and believed that ROUGHT was giving false information. ROUGHT did not make any statements to declarant that could possibly verify his story.  Declarant asked ROUGHT if there was any way he could prove that he had been saving for the past twenty-one years and ROUGHT said, "I guess not."  ROUGHT then told declarant he wished to have a lawyer present for more questioning.

14.     Upon arrival at the FHRO, TFOs escorted ROUGHT into a secure booking area and

secured him inside.  TFO Jake Degener (TFO Degener), TFO Lee Rinehart (TFO Rinehart), TFO Tony Tomlinson (TFO Tomlinson), and TFO John Simmons (TFO Simmons) assisted with the case at the FHRO.  During a more detailed search of the vehicle, a separate loose bundle of United States currency was located inside the brown laundry bag.  TFO Thebeau secured the loose bundle of United States currency into a separate Evidence Envelope, as witnessed by TFO Waddington.

15.     Declarant and TFO Blake conducted an audio/video interview with ROUGHT at the FHRO.  ROUGHT invoked his right to an attorney and denied consent for the TFOs to conduct a search on the cellular phones found inside the vehicle.

16.     After the interview was completed, TFO Blake escorted ROUGHT back into the booking area where ROUGHT was given his personal belongings and released from custody.

17.     On the same date, TFO Degener and his K-9 Blu conducted an open-air sniff of the United States currency seized from ROUGHT's vehicle.  TFO Waddington recorded a video of the K-9 sniff performed by TFO Degener and K-9 Blu.  TFO Degener informed TFO Waddington that K-9 Blu gave a positive alert for the odor of narcotics on the United States currency.

18.     On March 12, 2021, TFO Tomlinson and TFO Simmons transported the seized currency to Loomis for an official count.  The total was determined to be $69,850.00.

19.     Additional investigation was done to follow up on the plausibility of ROUGHT's travel itinerary.  TFOs recovered receipts in ROUGHT's rental vehicle that place ROUGHT at Kwik Fill in North East, Pennsylvania on March 10, 2021; at Shell in Clayton, OH and at Staybridge Suites in Columbus, Ohio on March 11, 2021.  This would be consistent with ROUGHT's claim that he was traveling to Texas first and then to Pine Island.  However, Google Maps shows that traveling from ROUGHT's home in New York to Texas and then to Pine Island, Florida would be approximately 3,321 miles one way and would take 49 hours.  Additionally, ROUGHT told declarant that his wife

was teacher.  Investigators were able to look Michelle Rought up on  New York's public employee website (www.SeeThroughNY.com) which shows that her total pay for 2020 was $31,519.

19.     Based on the foregoing, declarant believes that the $69,850.00 in United States Currency is property which constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used to facilitate a violation of 21 U.S.C. § 801 *et seq*.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___3___ day of September, 2021.

_____
LARRY BRANTLEY
Task Force Officer
Drug Enforcement Administration